**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **David L. Lisy** ) | **CASE NO.** |
| **36225 Detroit Road** ) | |
| **Suite 214** ) | |
| **Avon, Ohio 44011** ) | **JUDGE PATRICIA A. GAUGHAN** |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | |
| ) | |
| **Cuyahoga County, Ohio** ) | |
| **2079 E. 9th Street, 8th Floor** ) | |
| **Cleveland, Ohio 44115** ) | |
| ) | |
| **and** ) | **(Type: Other Civil; Employment** |
| ) | **Discrimination; Jury** |
| **Cuyahoga County Sheriff's Department** ) | **Demand Endorsed Hereon)** |
| **1215 West 3rd Street** ) | |
| **Cleveland, Ohio 44113** ) | |
| ) | **(This is a refiled case; prior** |
| **Defendants.** ) | **Case No.: 1: -18-cv-01083)** |

Plaintiff, David L. Lisy for his several causes of action and claims for relief against Defendants, jointly and severally, avers, as of all times pertinent, the following matters and things.

### Introduction

1. This is an employment discrimination case, brought pursuant to the provisions of the Civil Rights Act of 1866, 42 U.S.C. §1981, as amended by the Civil Rights Act of 1991 ("Section 1981") and Ohio Revised Code §4112.02(A) and R.C. §4112.02(I). Plaintiff David Lisy contends that he was treated differently than comparable employee not within his protected class status on account of his race and color and was subjected to retaliation after he repeatedly complained about the manner in which he was treated all

1

resulting in a hostile work environment that led to his construction termination.

## Parties and Venue

2. Plaintiff David L. Lisy is male, of mixed-race (African-American, Native American and Caucasian) and was and is a resident of the above address and was employed by the above-named Defendants from July 31, 2006 until he was constructively terminated on or about July 5, 2019.

3. Mr. Lisy was initially employed as a Sheriff's Deputy in the Cuyahoga County Sheriff's Department. In September 2013 he was promoted to the rank of Sergeant, the rank he held at the time of his constructive discharge.

4. Defendant Cuyahoga County, Ohio is a political subdivision of the State of Ohio. Defendant Cuyahoga County Sheriff's Department is a department of Cuyahoga County. Defendants Cuyahoga County and Cuyahoga County Sheriff's Department are collectively referred to as "Defendants" or the "County".

5. This Court has original jurisdiction of plaintiffs' Section 1981 claims pursuant to 28 U.S.C. §§1331 and 1343(a)(4).

6. Defendants engaged in patterns or practices of employment discrimination and retaliation, all in violation of 42 U.S.C. §1981 against Sgt. Lisy on account of his race/color and/or on account of his complaints of race/color discrimination in the workplace.

7. Defendants at all times relevant hereto were and are employers within the meaning of the Ohio Civil Rights Act ("OCRA"), Chapter 4112, Ohio Revised Code ("R.C."), and specifically R.C. §4112.01(A)(2) of the OCRA.

8. Defendants engaged in patterns or practices of employment discrimination and

retaliation, all in violation of R.C. §4112.02(A),  R.C. §4112.02(I) of the OCRA, R.C. §4112.99 and the provisions of the Ohio Administrative Code ("OAC") promulgated thereunder against Sgt. Lisy on account of his race/color and on account of his complaints of race/color discrimination in the workplace.

9. Defendants' acts and omissions, as set forth below, constituted continuing and ongoing violations of race/color-based discrimination and retaliation against Sgt. Lisy having engaged in activity protected under 42 U.S.C.§1981, R.C. § 4112.02(A) and R.C. §4112.02(I).

10. Venue is proper in this District pursuant to 28 U.S.C. §1391(c) and 42 U.S.C. §2000-5(f)(3) as the actions that give rise to Plaintiff's causes of action arose in the Northern District of Ohio.

11. This Court has pendent, supplemental, and/or ancillary jurisdiction over Sgt. Lisy's Ohio statutory a claims by virtue of 28 U.S.C. §1367.

**Factual Allegations Common to All Claims**

12. Defendants created, fostered, and condoned a pattern and practice of race and color based disparate treatment toward Sgt. Lisy on account of his color and/or race.

13. At all relevant times, Sgt. Lisy was treated differently and less favorably than similarly situated employees not of his protected class statuses.

14. At all times relevant hereto, Defendants' actions and/or inactions permitted, fostered, and condoned a workplace wherein white employees were treated more favorably than black employees and, at times, black employees of were treated more favorably than those of mixed race.

15. At all times relevant hereto Sheriff Clifford Pinkney ("Sheriff Pinkney") was the Chief

of the Cuyahoga County Sheriff's Department and was later duly appointed Sheriff of the Cuyahoga County Sheriff's Department.

16. Sheriff Pinkney harbored discriminatory and retaliatory animus toward Sgt. Lisy and engaged in a course of discriminatory and retaliatory conduct toward Sgt. Lisy that negatively impacted the terms and conditions of Sgt. Lisy's employment.

17. The acts and omissions of Defendants that constitute the discrimination and retaliation against Sgt. Lisy were continuing violations negatively affecting the terms and conditions of his employment.

18. On April 14, 2014 Sgt. Lisy filed an internal complaint with the Sheriff's Department in which he complained that he was removed from the High Visibility Enforcement Objective detail ("HVEO") that he had been assigned to since 2011 on account of his race/color. At the time he was the only black/mixed race deputy assigned to the HVEO detail. His supervisor, Sergeant Campbell, complained to Lt. Bryan Smith, the next level of supervision in the chain of command, about Sgt. Lisy's preparation of tour of duty reports, which Sgt. Campbell falsely claimed were not uniform and were not comparable to his reports. The reports of white deputies were not uniform or comparable to Sgt. Campbell's either, however the white employees were not removed from the HVEO detail or otherwise counseled or disciplined. While assigned to the HVEO detail Sgt. Lisy was not afforded the same amount of overtime as the white deputies. As a result of his removal from the HVEO, Sgt. Lisy was not eligible for the overtime afforded other members of the HVEO detail.

19. At one point prior to this time period, Mr. Lisy was assigned to the operations desk at the Cuyahoga County Justice Center. A Cleveland Clinic police officer brought in an

intoxicated African American gentleman. Sgt. Campbell, who was supervising the operations desk, stated "You gotta love a nigger that fucked up." Mr. Lisy was offended by the comment.

20. On May 28, 2014, after not receiving any resolution of his internal complaint, Mr. Lisy filed a charge of discrimination with the Cleveland Field Office of the United States Equal Employment Opportunity Commission ("EEOC"), Charge No. 532-2014-01339 (hereinafter Charge 1.) The basis of the charge was the same as that raised in his internal complaint: that he was being treated differently than similarly situated white employees, not of his protected class, on account of race/color (Black, American Indian, Biracial (Black and White).

21. Sheriff Pinkney, who at the time Charge 1 was filed was Chief Pinkney, called Sgt. Lisy into his office, threw a copy Charge 1 across his desk toward Sgt. Lisy. He stated that Charge 1 would be denied because the Department had promoted Sgt. Lisy in lieu of addressing the issues raised in Charge 1.

22. In January of 2015, while assigned as a supervisor in the Cuyahoga County Sheriff's Detective Bureau, Sgt. Lisy was assigned to supervise a Use of Deadly Force (UDF) investigation team involving the City of Cleveland Division of Police (CPD). Growing out of that investigation, Sgt. Lisy and a coworker began formulating what is now called the UDF Team, which grew to a team of thirteen (13) detectives (each of whom had separate, full-time assignments throughout the Sheriff's Department). Sgt. Lisy was responsible for the supervision of investigations and facilitating the training for the UDF team members.

23. On August 25, 2015, the EEOC issued a Notice of Rights. Sgt. Lisy elected not to bring

a civil action at that time, although he was subjected to retaliation for having engaged in protected activity. He was subjected to disparate treatment in, *inter alia*, the assignment of duties, and access to opportunities to work overtime hours.

24. Defendants took no remedial action in response to his complaints.

25. Despite his complaints of disparate treatment and hostile work environment on account of his race/color and the acts of retaliation for his having engaged in activity protected under federal, state, and local anti-discrimination laws, Defendants continued to engage in retaliatory conduct toward him.

26. In October 2015 Sgt. Lisy learned that two Sheriff's Deputies had contracted with a private detective agency to conduct a background investigation of Sgt. Lisy as a means to discredit him and undermine his authority as a supervisor. The detective agency is owned and operated by the brother of a Cuyahoga County Deputy Sheriff.

27. On January 14, 2016 Sgt. Lisy learned that these two Sheriff's Deputies met with Sheriff Pinkney to discuss the findings of the private investigation they had commissioned. The investigation revealed a sealed record that related to Sgt. Lisy. Sgt. Lisy was told that Sheriff Pinkney would most likely remove him from his supervisory position in the Detective Bureau as a result of Sheriff Pinkney's meeting with these two deputies, and based upon the disclosure of the sealed record, he determined that Sgt. Lisy could not be trusted. Rather than put an end to the two deputy's illicit private investigation into Sgt. Lisy's past, Sheriff Pinkney further fostered and condoned the race/color and retaliation-based hostile work environment that Sgt. Lisy had been subjected to and permitted his subordinates to engage in inappropriate, retaliatory and illegal conduct and harassment toward Sgt. Lisy in the workplace.

28. While Sgt. Lisy had also complained to his immediate chain of command, they did not have authority or ability to correct the decisions made by Sheriff Pinkney.

29. The disparate treatment and retaliatory acts of Defendants became so intolerable that on January 19, 2016 Sgt. Lisy forwarded a confidential memorandum to Cuyahoga County Executive Armond Budish and the County Human Resources Director in which he outlined the hostile work environment that he had been and continued to be subjected to in retaliation to his filing of the internal complaint and Charge 1, as well as the continued race/color-based discrimination.

30. On January 19, 2016 Sgt. Lisy met with the Cuyahoga County Compliance Manager and Cuyahoga County Human Resources to lodge a complaint that the Sheriff's Department, by the acts and omissions of Sheriff Pinkney, had further created, fostered, and condoned a hostile work environment due to Sgt. Lisy's prior engagement in protected activity and his race and/or color.

31. On February 2, 2016, after reviewing Mr. Lisy's yearly evaluation, Sheriff Pinkney ordered Lieutenant Smith, Mr. Lisy's supervisor, to revisit the evaluation because Sgt. Lisy had received high ratings of 4 and 5 in each area of his evaluation, which Sheriff Pinkney felt were too high.

32. On February 11, 2016 Sgt. Lisy learned that Sheriff Pinkney threatened that whoever was responsible for contacting County Executive Budish would be "dealt with". He took this to mean that additional retaliation by Sheriff Pinkney would be forthcoming.

33. On February 12, 2016 one of the two sheriff's deputies who had pursued a private investigation of Sgt. Lisy pursued a public record's request with the County seeking Sgt. Lisy's complete personnel file including his job application. Sgt. Lisy's chain of

command notified him on February 16, 2016. Again, the Defendants took no action against the two deputies, again fostering and condoning inappropriate and illegal conduct and harassment toward Sgt. Lisy in the workplace.

34. On February 16, 2016 Lt. Smith was ordered by Capt. Peters to review an evaluation of Melissa Harris, a subordinate of Sgt. Lisy and friend of Sheriff Pinkney, conducted by Sgt. Lisy because his ratings of her ratings were "too low". Cpt. Peters ordered Lt. Smith, Sgt. Schilling, and Sgt. Lisy to rewrite the evaluation, but they refused as the evaluation was an accurate representation of Deputy Harris' performance.

35. On February 17, 2016 Cpt. Peters ordered Sgt. Lisy to his office and advised Sgt. Lisy that despite his confidence in him as a supervisor he did not agree with the evaluation of Deputy Harris and that he would rewrite the evaluation and that Deputy Harris would be reassigned to another supervisor. Sgt. Lisy inquired as to how the deficiencies in Deputy Harris' work would be handled. Cpt. Peters told him that it was not his concern. He told Sgt. Lisy that it was "the way things are", "despite how they are supposed to be" and that he needed to "learn how to navigate in the current climate". Sgt. Lisy contends that Sheriff Pinkney ordered the rewrite of the evaluation in an effort to discredit and undermine Sgt. Lisy's ability to supervise his direct reports.

36. On February 18, 2016 Sgt. Lisy was informed that he was being removed from the UDF team. His removal left Sergeants and Deputies with less experience and training than he, and who had not engaged in protected activity as members of the UDF team. This was a further act of discrimination and retaliation ordered by Sheriff Pinkney. As a result of his removal from the UDF team Sgt. Lisy lost substantial opportunities for overtime thus suffering a financial loss.

37. On February 23, 2016 Sgt. Lisy was told by his supervisor Lt. Smith that Sheriff Pinkney stated, in a staff meeting, that he would be removed from the Detective Bureau. According to Lt. Smith, Sheriff Pinkney said it was a "business decision" and that if those who were affected did not like it, "it's too bad, so sad." Later that day, Cpt. Peters told Sgt. Lisy that "Rocky River Dispatch is hiring." Sgt. Lisy asked Cpt. Peters if he should be looking for another job. Cpt. Peters replied, "I don't know, maybe". Cpt. Peters then stated that he had done everything that he could for him and asked when Sgt. Lisy would be leaving the Detective Bureau. Cpt. Peters told him he would do everything in his power to "bring him back once the storm passes."

38. On March 1, 2016 Lt. Smith again informed Sgt. Lisy that it was likely that he would be removed as a supervisor in the Detective Bureau and that per Sheriff Pinkney disciplinary investigations of Sgt. Lisy would likely ensue.

39. In March and April 2016 Sgt. Lisy was advised by another, then Sgt. Sharpe, that certain Sheriff's Deputies were spreading rumors that Sgt. Lisy had engaged in improprieties in the use of travel funds while he was on the UDF team. Sgt. Lisy was told that Sheriff Pinkney had commissioned Fiscal Officer Donna Kaleal to investigate the appropriation of funds relative to the travel costs for attending training. The rumors were leaked to a local news station. Sgt. Lisy asked Cpt. Peters if he knew of an investigation into Sgt. Lisy's conduct, and he responded he did not, but that Sheriff Pinkney may know.

40. On March 15, 2016 Sgt. Lisy's take home, work vehicle was ordered to be returned by Sheriff Pinkney. After this he used his personal vehicle to travel to and from work. Subsequently, Sgt. Lisy's personal vehicle was damaged while parked in the Sheriff's

Department garage; an investigation failed to result in any parties being held responsible for the damage.

41. On April 11, 2016 Sgt. Lisy received a telephone call from a local news station's investigative reporter who inquired about the UDF team travel funding for training investigation. The reporter related that he was informed that two sergeants and a lieutenant were removed from the UDF team because of an investigation into expenditures on a UDF team trip.

42. On April 29, 2016 Sgt. Lisy learned that Sheriff's Deputies were again showing a court sealed, 1994 booking photo of Sgt. Lisy around the Department.

43. On May 10, 2016 Sgt. Lisy received notice that a Lieutenant's exam was being given on June 26, 2016. This was three months before he was eligible to take the examination. There had been two unfilled lieutenant positions for the past two years which constituted a violation of the Collective Bargaining Agreement. Sgt. Lisy sent a written request to the Human Resources Department that he be permitted to take the exam. He received no reply.

44. Sgt. Lisy contends the date for the examination was chosen so that he would not be eligible to take the examination, thereby limiting his upward mobility within the department. In fact, the promotion of two lieutenants from that list occurred less than seventeen days before Sgt. Lisy would have been eligible for promotion.

45. On May 14, 2016 Cuyahoga County Human Resources Department notified Sgt. Lisy that after investigation of his latest complaint of a retaliatory hostile work environment the conclusion was that there was insufficient evidence to support that Sheriff Pinkney had violated Sgt. Lisy's rights.

46. On June 16, 2016 Sgt. Lisy again initiated a charge of discrimination with the U.S. Equal Employment Opportunity Commission alleging discrimination on account of his race/color and retaliation for having engaged in activity protected under state and federal anti-discrimination statutes, and in particular having filed Charge 1 with the EEOC (hereinafter "Charge 2").

47. On September 21, 2016 Lt. Smith advised Sgt. Lisy that in a staff meeting that Cpt. Gerome, Sgt. Lisy's new supervisor, intended to remove Sgt. Lisy from the Detective Bureau because he did not trust him and that Cpt. Gerome believed that he would suffer fallout from any ongoing litigation by Sgt. Lisy involving his claims of retaliation and hostile work environment.  Lt. Caraballo who was replacing Lt. Smith as Sgt. Lisy's direct supervisor, advised Cpt. Gerome to leave well enough alone unless he wanted to be wrapped up in the lawsuit. At that point Cpt. Gerome acquiesced and stated the Sgt. Lisy was the most experienced and best qualified sergeant to run the Detective Bureau.

48. On December 28, 2016 Sgt. Lisy was assigned to research training for Cuyahoga County Sheriff's Department Dispatchers. He found training that would allow him to become an instructor/trainer so he could then certify the dispatchers. He was denied this training.

49. After his engagement in the aforementioned protected activity he made numerous requests for training that would have benefited the Sheriff's Department which were either ignored or denied.

50. On January 30, 2017 Sgt. Lisy was advised that when the new sergeants were promoted there would be a shake-up of the current sergeants who would be reassigned.

51. On February 2, 2017 Sgt. Lisy had a conversation with a subordinate detective who

stated that many of the deputies in the Detective Bureau had lost respect for him because they have seen how his power and ability to lead has been stripped since he began pursuing the retaliation and hostile work environment claims.

52. On February 8, 2017 Cuyahoga County Fiscal Officer Donna Kaleal asked Lt. Caraballo if Sgt. Lisy was going to be moving forward with a complaint against Sheriff Pinkney. At the time, she insinuated that she and Sheriff Pinkney's secretary had information which validated Sgt. Lisy's complaints of retaliation.

53. On February 9, 2017 Sgt. Lisy learned that after he made his initial complaint of a discrimination and hostile work environment in 2014, then Chief Deputy Pinkney stated "I told Lisy not to file the complaint . . . that mother f****r" is out of control."

54. On March 9, 2017 Sgt. Lisy was informed that he was being transferred from the Detective Bureau to the Juvenile Justice Center effective April 2, 2017. The Juvenile Justice Center assignment is historically known as a punishment post. As a result of his removal from the Detective Bureau, Sgt. Lisy lost substantial opportunities for overtime thus suffering further financial loss.

55. On March 13, 2017 Sgt. Lisy met with Chief Deputy George Taylor to discuss the transfer. Chief Taylor stated that all sergeants had been moved in order to get everyone more experience. Sgt. Lisy reminded him that two sergeants were not transferred. He replied that they were needed at their posts. Chief Taylor stated that the captains had input as to the changes; but two other captains informed Sgt. Lisy that the captains had no input in the process. In fact, Cpt. Gerome confirmed that the list was "pre-populated" specifically with Sgt. Lisy being moved to Juvenile Justice Center.

56. On March 24, 2017 Sgt. Lisy was moving some of his office materials to the Juvenile

Justice Center. He was approached by a coworker who told him that recently Deputies were passing his sealed booking photograph from 1994 around the Juvenile Justice Center. Sgt. Lisy immediately reported the incident to his new supervisor Lt. Rivera. Sgt. Lisy informed Lt. Rivera that he had previously reported this conduct to HR; however, the issue was never addressed by HR or Lt. Rivera.

57. On April 19, 2017 Sgt. Lisy again emailed County Executive Armond Budish seeking review of his complaints of discrimination, hostile work environment and retaliation.

58. On May 22, 2017 he contacted Cuyahoga County HR department about his complaints and requested that investigation into his complaints be re-opened.

59. On May 25, 2017 he met with the HR manager at the Cuyahoga County HR office to discuss his complaints. He later provided the HR manager a list of witnesses with an explanation of the information each may have and their particular involvement in the discriminatory and retaliatory conduct he had to endure in the workplace. He was assured there would be a thorough investigation; however, none of the witnesses were ever interviewed.

60. On August 21, 2017 Sgt. Lisy received a text message from a retired Deputy that stated "Lisy has declared a jihad against the dep." Sgt. Lisy reported the incident to Chief Frank Bova, Chief Deputy George Taylor, Cpt. Richard Peters, and Lt. Nestor Rivera. Again, nothing was done to address this intimidation and continued retaliation.

61. On October 17, 2017 Sgt. Lisy was interviewed by HR Investigator Flores and HR Manager Michael Brown about a retaliation complaint filed by Deputy Melissa Harris. He was also asked about his complaints, but he informed Mr. Brown he was represented by counsel.

62. On January 12, 2018 Sgt. Lisy asked HR Manager Brown about the status of his investigation of his complaints. Mr. Brown informed him that three of the complaints were unsubstantiated and that he was still investigating the hostile work environment claim.

63. On January 12, 2018 Sgt. Lisy learned that the Department promoted six new sergeants, who were assigned to supervise far more desirable posts than the Juvenile Justice Center, thereby leaving him in that post. Sgt. Lisy had more education, training and experience and was more qualified to fill the positions to which the new sergeants were assigned.

64. On January 12, 2018, the Cuyahoga County Human Resources Department determined that upon additional reconsideration after reopening Sgt. Lisy's complaints, the complaints were unsubstantiated. Sgt. Lisy contends the investigation was insufficient and failed to take into account the full nature and extent of the retaliation was and continued to be subjected to in the workplace.

65. On February 15, 2018, the US EEOC issued Dismissal and Notice of Rights on Charge 2.

66. From February 15, 2018 until his constructive discharge on or about July 5, 2019 Sgt. Lisy was subjected to further retaliation. He was continually denied training opportunities and continued to be assigned to the Juvenile Court as retaliation/punishment for his engagement in the aforementioned protected activity. His superiors routinely denied his requests for additional support in his management of Sheriff's Department duties in the Juvenile Court.

67. Despite his continued engagement in protected activity Defendants failed and refused

to take any prompt remedial action as to any of Sgt. Lisy's complaints rather, he was effectively demoted to a position in the Juvenile Justice Center which ended his career progression and severely damaged his reputation in the Sheriff's Department.

68. Further, Defendants' failure to take prompt remedial action in response to his complaints of disparate treatment and retaliation motivated and/or resulted in coworkers engaging in unwarranted, discriminatory, and retaliatory conduct, inquiries and investigations regarding his employment and personal history; all in an effort to undermine his authority and to discredit him in his employment and in further retaliation for his engagement in protected activity. Defendants knew of and/or directly participated in this activity and/or have failed to take appropriate action to address the retaliatory actions of his coworkers and subordinates.

69. Defendants' failure to take any action with regard to the actions of coworkers demonstrates that Defendants, by acts or omissions, fostered and condoned the retaliatory conduct.

70. Defendants' discriminatory and retaliatory conduct toward Sgt. Lisy created, fostered, and condoned a hostile work environment which continued to cause him concern as to his ability to maintain his career with Defendant and also as to his safety in the workplace.

71. The manner in which he was treated subjected him to ridicule in the Sheriff's Department, damaged his reputation and standing in Sheriff's Department thereby causing him continual severe stress. The working conditions he was subjected to, the retaliatory hostile work environment, Defendants' failure and refusal to afford him the same opportunities for assignments and overtime afforded comparable employees not

within his protected class, the retaliatory career ending reassignment to the Juvenile Justice Center, and Defendants' failure and refusal to take any remedial action to correct the continuous disparate treatment he was subjected to in the workplace, were so intolerable that a reasonable person in Sgt. Lisy's position would have felt compelled to resign. He was left with no alternative but to resign to alleviate the continuous offensive and unwelcome retaliation-based hostile work environment he endured, and which caused his continual, severe stress in the workplace.

72. As a direct result of the manner in which Defendants fostered and condoned the discriminatory and retaliatory treatment of Sgt. Lisy, he was left with no option but to resign from his position, thereby effecting a constructive discharge from his employment.

## Count I (Section 1981 Claims)

73. All foregoing relevant material and pertinent averments are reiterated and incorporated herein by reference.

74. Defendant's discrimination and retaliation against Sgt. Lisy constitutes a violation of the rights afforded him under the Civil Rights Act 1866, 42 U.S.C. §1981, as amended by the Civil Rights Act of 1991.

75. By virtue of the Defendants' discriminatory and retaliatory conduct set forth above, Defendants intentionally deprived Sgt. Lisy of the same rights that are enjoyed by white employees to the creation, performance, enjoyment, and all benefits and privileges, of their contractual employment relationship with Defendants all in violation of 42 U.S.C. §1981.

76. As a direct result of Defendants' discriminatory and retaliatory conduct in violation of

Section 1981, Sgt. Lisy has been denied employment opportunities providing substantial compensation and benefits, thereby entitling him to monetary relief and he has suffered anguish, humiliation, distress, inconvenience and loss of enjoyment of life because of Defendants' actions, thereby entitling him to compensatory damages and such other damages available pursuant to 42 U.S.C. §1981a.

### Count II (Ohio Civil Rights Act Violations – R.C. §4112.02(I))

**77.** All foregoing relevant material and pertinent averments are reiterated and incorporated herein by reference.

**78.** Defendants at all times relevant hereto were and are employers within the meaning of the Ohio Civil Rights Act ("OCRA"), Chapter 4112, Ohio Revised Code ("R.C.").

**79.** Defendants engaged in patterns or practices of retaliation against Sgt. Lisy on account of his engagement in activity protected under the OCRA all in violation of R.C.§ 4112.02(I) of the OCRA, and the provisions of the Ohio Administrative Code ("OAC") promulgated thereunder.

**80.** Defendants' actions constituted continuing violations all of which created a retaliation-based hostile work environment all on account of Sgt. Lisy having engaged in activity protected under R.C. §4112.02(I).

**81.** By reason of the foregoing acts and omissions of retaliation against Sgt. Lisy on account of his engagement in activity protected the OCRA and OAC, in particular .R.C. §4112.02(I), and R.C. §4112.99, Plaintiff has suffered damages in indeterminate sums to be proven at trial in terms of: loss of salary or wages plus value of fringe benefits to date of trial ("Back Pay") and thereafter ("Front Pay"); mental anguish and emotional distress, humiliation and disparagement of reputation, and general loss of enjoyment of

life, all warranting further or general compensation ("Compensatory Damages") which ought to be awarded by reason of the deliberate, intentional, willful, wanton, malicious and/or reckless violations of the OCRA and OAC by the Defendants.

### Count III (Ohio Civil Rights Act Violations – R.C. §4112.02(A))

**82.** All foregoing relevant material and pertinent averments are reiterated and incorporated herein by reference.

**83.** Defendants at all times relevant hereto were and are employers within the meaning of the Ohio Civil Rights Act ("OCRA"), Chapter 4112, Ohio Revised Code ("R.C."), and specifically R.C. 4112.01(A)(2) of the OCRA.

**84.** Defendants engaged in patterns or practices of race/color discrimination against Sgt. Lisy all in violation of R.C. 4112.02(A) of the OCRA, and the provisions of the Ohio Administrative Code ("OAC") promulgated thereunder.

**85.** Defendants' actions constituted continuing violations all of which created a race/color-based hostile work environment all on account of Sgt. Lisy's race/color.

**86.** By reason of the foregoing acts and omissions of race/color discrimination against Sgt. Lisy on account of his race/color, Plaintiff has suffered damages in indeterminate sums to be proven at trial in terms of: loss of salary or wages plus value of fringe benefits to date of trial ("Back Pay") and thereafter ("Front Pay"); mental anguish and emotional distress, humiliation and disparagement of reputation, and general loss of enjoyment of life, all warranting further or general compensation ("Compensatory Damages") which ought to be awarded by reason of the deliberate, intentional, willful, wanton, malicious and/or reckless violations of the OCRA and OAC by the Defendants.

WHEREFORE, Plaintiff demands:

A. Trial by jury on all Counts and issues of law, followed by bench trial to the Court on remaining issues of equity, if any;

B. Judgment for Plaintiff and against Defendants on Count 1 for equitable monetary relief, compensatory damages, and any other damages available within the limits of 42 U.S.C. §1981a.

C. Judgment for Plaintiff and against the Defendants on Counts II and III for said sums of Back and Front Pay and Compensatory Damages and as well as any other damages or relief available under ORC Chapter 4112;

D. Judgment for pre-judgment interest on any and all damage awards, plus costs; and

E. Such other and further relief and redress as is just and equitable under the circumstances

Respectfully submitted,

  s/ John F. Myers
John F. Myers #0032779
234 Portage Trail
Cuyahoga Falls, Ohio 44221
330-819-3695
330-535-0850
johnmyerscolpa@gmail.com
Attorney for Plaintiff David L. Lisy